The **TRAVELERS INDEMNITY COMPANY**, a corporation, Appellant,

v.

**UNITED STATES** of America, for the Use and Benefit of **WESTERN STEEL COMPANY**, a corporation, Appellee.

No. 20357.

United States Court of Appeals
Ninth Circuit.
June 28, 1966.

---

21. 29 U.S.C. § 411(a) (3) (B) (i). See fn. 10.

22. See fn. 21.

Ralph C. Sipprell, Portland, Or., Richard Crake, of Hillyer, Crake & Irwin, San Diego, Cal., for appellant.

Macoy A. McMurray, McKay & Burton, Salt Lake City, Utah, Roger L. Meyer, of Sabin, Dafoe & Newcomb, Portland, Or., for appellee.

Before HAMLEY and JERTBERG, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge:

In this Miller Act case (40 U.S.C. § 270a et seq.), the Claimant, Western Steel Company, recovered judgment on the payment bond written by The Travelers Indemnity Company as surety for the General Contractor, Jen-Mar Construction Company. The general contract required the construction of a radar tower at Condon Air Force Station, Oregon. Jen-Mar entered into two contracts with Empire Steel, the first dated May 23, 1962, calling for the furnishing of "all materials per Article One (1) for the following Sections of the Plans and Specifications * * * Section 3, Structural Steel Complete as required * * * Section 8, Miscellaneous Metals Complete as required * * * Section 17, Interior Enclosures and Partitions Complete as required," and other items. This contract was prepared on a Standard Contract Agreement form "Special Form for Materials Only" used by Associated General Contractors of Minnesota. Special requirements of this contract were (1) sums to become due Empire Steel thereunder could not be assigned without Jen-Mar's consent; (2) materials to be delivered as required to coordinate with

other work; (3) Empire Steel to furnish a performance and payment bond, unless this requirement be waived by Jen-Mar (as it later was); (4) the responsibility of preparing and submitting shop drawings and submittal data under the general plans and specifications was placed on Empire Steel; and (5) Empire Steel was to be paid ninety per cent (90%) of the value of materials delivered to the jobsite by the 15th day of the month— the final ten per cent (10%) to be paid "within thirty days after completion and acceptance by the Contracting Officer of all items involved." The contract involved approximately twenty-two per cent of the contract price for the entire project. Subsequently, under date of July 6, 1962, Jen-Mar and Empire Steel entered into a second contract, a Standard Sub-Contract, "Labor and Materials" on the Associated General Contractors of Minnesota printed form. This second contract called for the erection of the radar tower by Empire Steel.

On June 15, 1962, Western Steel Company contracted with Empire Steel to furnish structural steel, floor plating and miscellaneous items covered by the aforementioned agreements, and to deliver them F.O.B. trucks at Western Steel's yard. The steel so furnished and delivered had to be specifically fabricated, that is, cut, shaped, welded and punched to comply with the general plans and specifications and the shop drawings furnished by Empire Steel.

Under the foregoing summarized facts, the District Court found that Empire Steel was a subcontractor of the General Contractor, Jen-Mar, and that Western Steel was a qualified Miller Act claimant as one having a direct contractual relationship with a subcontractor. 40 U.S.C. 270b; MacEvoy Co. v. United States for Use and Benefit of Calvin Tomkins Co., 1944, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163. Appellant surety company argues that the Empire Steel—Jen-Mar contract, which Western Steel undertook to perform, in part, was a contract solely for the supply of materials, that Empire Steel was not a subcontractor as to that contract, and that Western Steel, as a seller of materials to a material supplier to the General Contractor, was not a qualified Miller Act claimant.

The related facts do not require us to meet squarely the problem of who is a subcontractor under the Miller Act because Jen-Mar and Empire Steel entered into two contracts, as described, and it was an agreed fact in the Pre-Trial Order, followed in the findings of the trial court, that "Western Steel Company * * * agreed to furnish structural steel and floor plating *covered by the aforementioned agreements.*" [Emphasis added.]

■■ We are satisfied that under the totality of circumstances, as found by the trial court and established by the evidence, Empire Steel was a subcontractor of the General Contractor and Western Steel was a proper claimant against the General Contractor's bond. A subcontractor is "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen." MacEvoy Co. v. United States for Use and Benefit of Calvin Tomkins Co., supra. While it may be that Western Steel's obligations related only to the undertakings of Empire Steel under the May 23, 1962 contract "Special Form for Materials Only", the fact that Empire Steel also negotiated and obtained a subcontract for erection of the radar tower is material to the inquiry and so beclouds the issue as to suggest the fruitlessness of attempting a definition of a subcontract concerned solely with the requirements of the May 23, 1962 agreement. In the statement of facts, we have noted the special requirements of that contract which lend credence to the conclusion that it, standing alone, may arguably be classified as a subcontract. Cf. Basich Bros. Const. Co. v. United States (9 CCA 1946), 159 F.2d 182; United States to Use of Hardwood Products Corp. v. John A. Johnson & Sons (W.D.Pa.1955), 137 F.Supp. 562; United States for the Use and Benefit of Gulfport Piping Co.

v. Monaco and Son, Inc. (D.C.Md.1963), 222 F.Supp. 175.

Appellant also has assigned as error the portion of the judgment awarding attorney fees for Western Steel's attorneys. In this case, the propriety of allowing attorney fees to a successful Miller Act claimant is not so ponderable as it will be in others, for we need not decide whether the allowance of such fees is to be governed by federal or state law, nor whether state statutes providing for the allowance of such fees with respect to state public works projects may be utilized as defining a state "public policy" if state law is held to govern the rights of a Miller Act claimant. Cf. United States for the Use and Benefit of Western Steel Co. v. Reliance Insurance Co. (D.C.Mont.1964), 227 F.Supp. 939; United States for the Use and Benefit of E. J. Bartells Co. v. Hoffman Construction Co. (E.D.Wash.1958), 163 F.Supp. 296.

 The contract between Empire Steel and Western Steel provides: "Should the buyer breach this agreement in any way, including failure to make payments as invoiced, then it is agreed that the buyer will pay a reasonable attorney's fee should seller be required to employ an attorney." If federal law governs, we deem it settled that such a contractual obligation for attorney fees becomes part of the compensation "justly due" [40 U.S.C. 270b(a)] the subcontractor or material supplier under the Miller Act. United States for the Benefit and on Behalf of Sherman v. Carter, 1957, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed. 2d 776; D. & L. Construction Co. v. Triangle Electric Supply Co. (8 CCA 1964), 332 F.2d 1009.

If the law of Oregon is considered to govern, O.R.S. Sec. 736.005 provides: "Definitions. (1) Insurance is a contract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event, whereby the insured or his beneficiary suffers loss or injury"; and O.R.S. Sec. 736.325 states: " * * *

[i]f * * * a suit or action is brought in any court of this state upon any policy of insurance of any kind or nature * * * the plaintiff * * * shall be allowed and shall recover as part of his judgment such sum as the court or jury may adjudge to be reasonable as attorney's fees." These statutes have been interpreted definitively by the Supreme Court of Oregon to be applicable to the bonds given by a contractor to protect those supplying him with labor and material. Fred Christensen, Inc. v. Hansen Const. Co. (1933), 142 Or. 549, 21 P.2d 195; State ex rel. Grinnell Co. v. E. H. White Co., 1960, 224 Or. 483, 356 P.2d 943. We observe that the Oregon law, like that of Idaho [United States for Use and Benefit of Midwest Steel & Iron Works Co. v. Henly (D.C.Ida.1954), 117 F.Supp. 928] is of general application governing rights in actions on any policy of insurance, including contractors' bonds, in that State. Thus, it is evident that state law, if applicable, justifies the award of attorney fees here.

The judgment is affirmed.