UNITED STATES of America, f/u/b Pioneer Steel Co., Plaintiff and Defendant-by-counterclaim,

v.

**ELLIS CONSTRUCTION CO., INC.,** Defendant and Plaintiff-by-counterclaim,

United States Fidelity and Guaranty Company, Defendant.

**Civ. A. No. 3116.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

Jan. 9, 1975.

As Corrected March 4, 1975.

---

S. J. Milligan, Greeneville, Tenn., A. Frank Lever, Jr., and R. G. Moffat, Jr., Lexington, S. C., for plaintiff.

Jackson C. Raulston, and John S. McLellan, Kingsport, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action under the Miller Act, 40 U.S.C. § 270a et seq., for the recovery by the use-plaintiff Pioneer Steel Company (Pioneer) of $67,017.30 from the prime constructor Ellis Construction Company, Inc. (Ellis) and its surety United States Fidelity & Guaranty Company for materials furnished Ellis by Pioneer for the construction of a government project. The parties are agreed that Ellis and its surety are indebted to Pioneer on such account in such amount.

Ellis as plaintiff-by-counterclaim, claims that Pioneer, as defendant-by-counterclaim, is indebted to the former in the amount of $135,770.13 for breach of the agreement of these parties for negligent delay in furnishing such materials, breaching the specifications of their agreement as to painting and storing such materials, and for misfabrication of some of such materials. Pioneer admits that it owes Ellis $3,687.37 on the latter's counterclaim for reworking some of the materials furnished by Pioneer.

Trial was to the Court without a jury on October 22–24, 1974.

An initial consideration is whether in the premises Pioneer was a subcontractor of Ellis or a mere materialman. " * * * [A] subcontractor [for the purposes here] is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen. * * *" *MacEvoy v. United States* (1944), 322 U.S. 102, 108–109, 64 S.Ct. 890, 894, 88 L.Ed. 1163, 1168. " * * * [T]he distinction between a 'subcontractor' and a 'material-

man' turns on the substantiality and importance of the relationship between the middle party and the prime contractor. If a middle party has taken responsibility for a large and definable part of the construction project, he is a 'subcontractor'; otherwise he is a 'materialman'. * * *" *Aetna Casualty & Surety Company v. United States*, C.A. 5th (1967), 382 F.2d 615, 617[2]. " * * * One is not a subcontractor if '[t]here was no material delegation of the job the prime contractor was obligated to perform under the prime contract.' *United States ex rel. Bryant v. Lembke Const. Co.* (10 Cir. 1966) 370 F.2d 293, 296 * * *" *United States v. F. D. Rich Co., Inc.*, C.A. 9th (1973), 473 F.2d 720, 723[2]. " * * * [T]he mere nature of the product furnished may require a finding that [one] is a materialman. * * *" *Aetna Casualty & Surety Company v. United States, supra*, 382 F.2d at 617, n. 2.

Ellis entered into a prime contract with the plaintiff United States to furnish all labor and materials for the construction of a sodium nitrate facility in Tennessee. The adjusted amount of the contract was $2,212,206.76. A great deal of structural steel material was required for this project.

Ellis issued its purchase order no. 124–3 to Pioneer for the furnishing and supplying of certain prefabricated structural and miscellaneous steel for the project under the prime contract, §§ 5 (a), (b), and Pioneer accepted the order. The order aggregated $266,092, plus sales tax. Ellis entered into a subcontract with another firm, Industrial Contractors, to erect the steel on the construction site.

Pioneer was required to submit for the approval of the plaintiff's contracting officer shop drawings. Pioneer carried no inventory of steel. Ellis undertook to backcharge Pioneer for the cost of correcting unacceptable work. Pioneer's president Mr. John N. Campbell

testified that the prefabrication of the steel his company furnished Ellis was complex in design and detail. Yet, the bulk of the steel which was prefabricated was constituted of trusses to support the superstructure of the buildings being constructed. The next largest quantity of steel was prefabricated for a pipe-bridge to support conveyors.

Pioneer's contribution to the total cost of the improvement amounted to less than 9%. Pioneer did none of the erection of the steel on the construction site and did not supervise Industrial Contractors in such erection. Pioneer gave Ellis no performance bond. Pioneer invoiced Ellis for each shipment of the materials (and eventually collected therefor as a precedent condition to delivery of the steel). Pioneer charged sales taxes on the materials which it sold to Ellis.

A materialman of steel can hardly be denominated as an ordinary materialman who excludes " * * * ordinary materialmen. * * *" *Cf. MacEvoy v. United States, supra*, 322 U.S. at 108–109, 64 S.Ct. 890, 88 L.Ed. at 1168. As Industrial Contractors' laborers erected the steel, Pioneer's furnishing of the steel did not exclude laborers on the job. *Idem.* The fact that Pioneer custom-manufactured the trusses, pipe-bridges, and other items for the project does not constitute it a subcontractor. " * * * Custom manufacturing is simply not enough in itself to establish the relationship of responsibility and importance necessary to render a middle party a subcontractor. * * *" *Aetna Casualty & Surety Company v. United States, supra*, 382 F.2d at 617; *contra*: *United States v. John A. Johnson & Son*, D.C.Pa. (1955), 137 F.Supp. 562.

In the bid form for the prime contract herein, Ellis agreed to insert "Davis-Bacon Act", "Contract Work Hours and Safety Standard Act", "Over-time Compensation", "Apprentices", "Payroll and Basic Records", "Compliance with Cope-

land Regulations", "Withholding of Funds", "Subcontracts" and "Contract Determination in Debarrment in all Subcontracts" clauses in all its subcontracts for this project. In the same form, Ellis was required within seven days after an award to a subcontractor to deliver to the plaintiff's contracting officer a statement of the name and address of each subcontractor and a summary description of the work, at which time both the prime contractor and such subcontractor were required to furnish a statement signed by the latter, acknowledging the inclusion of such subcontract of the aforementioned clauses. Ellis does not allege that any of these matters were accomplished or undertaken to be accomplished.

From all the foregoing facts, this Court finds that Pioneer, in agreeing to furnish and fabricate the steel required by the prime contract, did not take responsibility for such a large and definable part of the construction project as to constitute Pioneer a subcontractor of Ellis, rather than a mere materialman. As such, Pioneer was only required to fabricate and furnish Ellis the structural and miscellaneous steel called for by the aforementioned sections of the prime contract and was not bound by the special provisions thereof.

As to the counterclaim of Ellis, the Court finds that Ellis did not specify in its purchase order to Pioneer the method and sequence of the steel Pioneer was to deliver to Ellis. Under the prime contract involved, the erection of the structural steel was agreed to be in accordance with the applicable provisions of the AISC specifications. Under those specifications, if the federal government (or its *alter ego,* in this instance, Ellis) wished to control the method and sequence of the erection of the steel, it would have so specified in the invitation to bid or in the specifications accompanying it. As this was not done,

Pioneer was authorized to proceed with the most economical method available to it consistent with the plans of specifications and such information furnished to it prior to the execution of the contract. AISC Code, Erection, § 7. Accordingly, there is no merit to Ellis' counterclaim in the sum of $89,222.50, predicated upon Ellis' claim that Pioneer caused 125 days' delay in the completion by Ellis of the prime contract.

Neither is there merit to Ellis' counterclaim for $5,500 for Pioneer's alleged breach of its contract with Ellis in relation to faulty painting (coating) of the steel before delivery. Ellis failed to support by a preponderance of the evidence its counterclaim that Pioneer breached its agreement in this regard.

Finally, Ellis claims an aggregate of $11,693.12 in its counterclaim as a result of extra work it was required to be accomplished because of Pioneer's misfabrication of some of the materials delivered to the construction site. As stated, *supra,* Pioneer conceded that it is indebted to Ellis for this reason in the aggregate amount of $3,687.37. The Court finds that Pioneer is indebted to Ellis thereunder in the further amount of $3,925.29 as damages for the breach by Pioneer of the parties' agreement.

It is Ordered and Adjudged that the use-plaintiff Pioneer Steel Company recover of the defendants Ellis Construction Company, Inc. and its surety United States Fidelity and Guaranty Company the sum of $67,017.30, with interest thereon from and after September 20, 1973 at the rate as provided by law, and that the plaintiff-by-counterclaim Ellis Construction Company recover of the defendant-by-counterclaim Pioneer Steel Company the sum of $7,612.66, with interest thereon at the rate provided by law. In all other respects, such judgment will remain as entered.