**UNITED STATES of America For the Use and Benefit of Tom CLARK d/b/a Building Specialties Company, Plaintiff,**

v.

**LLOYD T. MOON, INC. and United States Fidelity & Guaranty Company, Defendants.**

**Civ. A. No. J88–0167(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

Aug. 18, 1988.

Julie L. Sneed, David W. Mockbee, Jackson, Miss., for plaintiff.

Ron A. Yarbrough, Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants Lloyd T. Moon, Inc. (Moon) and United States Fidelity & Guaranty Company (USF & G) to dismiss or alternatively for summary judgment. Also before the court is the cross-motion of plaintiff United States of America for the Use and Benefit of Tom Clark d/b/a Building Specialties Company (BSC) for summary judgment. Each party has timely responded to the motion of the other and the court has considered the memoranda of authorities together with attachments submitted by the parties.

In this action, plaintiff, a supplier of steel used in a Miller Act project, has sued seeking recovery on the Miller Act bond issued by defendant USF & G.[1] The mate-

---

1. Under the provisions of the Miller Act, 40 U.S.C. §§ 270a–d (West 1986), before any con-tract, exceeding $25,000.00 in amount, for the construction, alteration, or repair of any public

rial facts are undisputed. Moon entered into a contract administered by the United States Purchase and Fiscal Office for the construction of the Operations and Training Facility at the Air National Guard Base in Gulfport, Mississippi (the Project). As required by 40 U.S.C. §§ 270a–d (West 1986), the Miller Act, USF & G issued its payment bond on behalf of Moon, the prime contractor. Pursuant to a purchase order executed between Moon and Phoenix Steel Company, Inc. (Phoenix), Phoenix provided all structural and miscellaneous steel and metal decking to Moon for use in constructing the Project. Plaintiff BSC supplied to Phoenix $9862.52 of the fabricated structural steel joists and decking. Having received only $200.00 in payment for those materials, BSC brought this action seeking recovery on the bond issued by USF & G of the balance due.

█ The sole issue to be decided on this motion is whether Phoenix was a "subcontractor" to Moon or whether it was instead merely a "material supplier" to Moon. The significance of this distinction derives from section 270b(a) of the Miller Act which provides, in pertinent part, that

> any person having direct contractual relationship with a subcontractor but no contractual relationship expressed or implied with the contractor furnishing said bond shall have a right of action upon the said payment bond. . . .

40 U.S.C. § 270b(a). Pursuant to this provision, if Phoenix was a subcontractor to Moon, then BSC, having furnished materials to Phoenix, is entitled to seek protection of the Miller Act bond given by Moon and USF & G. If, on the other hand, Phoenix was a material supplier to Moon, then BSC is not a qualified Miller Act claimant and can claim no protection under the bond. In

*MacEvoy v. United States,* 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944), the Supreme Court explained that for purposes of the Miller Act, the term "subcontractor"

> [i]n a broad, generic sense . . . includes anyone who has a contract to furnish labor or material to the prime contractor. . . . But under the more technical meaning, as established by usage in the building trades, a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen.

322 U.S. at 108–09, 64 S.Ct. at 894–95. The Fifth Circuit has observed that under *MacEvoy,* the distinction between a "subcontractor" and a "materialman" will, in a borderline case, turn on "the substantiality and importance of the relationship between the middle party and the prime contractor. If a middle party has taken responsibility for a large and definable part of the construction project, he is a 'subcontractor;' otherwise he is a 'materialman.'" *Aetna Casualty & Surety Co. v. United States,* 382 F.2d 615, 617 (5th Cir.1967).

The issue in *Aetna,* as in the present case, was whether an entity which had entered into a purchase order contract with the prime contractor to furnish all the miscellaneous steel and iron products for a Miller Act project was a subcontractor or was a materialman for purposes of recovery on a payment bond. In *Aetna,* as in the case at bar, some of the materials furnished were bought already fabricated and were delivered directly to the job whereas others were purchased as raw materials and custom fabricated by the supplier. The court, after noting that "[c]ustom manufacturing is simply not enough in it-

building or public work of the United States is awarded to any person, that person must furnish to the United States a performance bond and a payment bond. 40 U.S.C. § 270a(a)(1) and (2). The Act is intended to give persons supplying labor and material on government projects the same protection which the state lien laws would ordinarily give a person furnishing labor and material for use in private construction since lien protection is not available on construction of public buildings. *United States*

*for and on Behalf of Mississippi Road Supply Company v. H.R. Morgan, Inc.,* 542 F.2d 262 (5th Cir.1976), *cert. denied,* 434 U.S. 828, 98 S.Ct. 106, 54 L.Ed.2d 86 (1977). The Act requires that every suit instituted pursuant to its provisions be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed. 40 U.S.C. § 270b(b).

self to establish the relationship of responsibility and importance necessary to render a middle party a subcontractor[,]" set forth a number of factors which it viewed as relevant to the determination of whether the fabricator was a subcontractor or supplier. That the supplier was required to submit shop drawings for approval by the contractor, carried no inventory, and was "backcharged" for the cost of correcting any unacceptable work were considerations suggestive of subcontractor status. *Aetna*, 382 F.2d at 618. Factors tending to indicate that the supplier was a mere materialman included the following: the supplier's contract amounted to only two percent of the total construction cost; the supplier did no on-site work, either installing its products or supervising their installation; the supplier gave no performance bond to the prime contractor; the supplier did not receive progress payments; and the supplier included sales tax in the contract price. *Id.* The most important factor, however, was the nature of items supplied.

> None was a complex, integrated system. The most complex items were prefabricated stairs and ladders.... Both the variety and the relative simplicity of the items supplied weigh heavily against finding that [the supplier] took over a significant and definable part of the construction project.

*Id.* Upon weighing the various considerations, the Fifth Circuit concluded that the middleman in question was a material supplier and not a subcontractor.

■ This court's analysis of the facts presented in the case *sub judice* is governed by the *Aetna* opinion inasmuch as the court there provided the applicable factors to be examined. In the present case, it is undisputed that Phoenix and BSC prepared thirteen shop drawings and nine cut length sheets depicting the assembly and placement of structural joists and decking, beams, stairwells and other structural components, all of which were submitted to and approved by Moon, the prime contractor. However, Phoenix, unlike the claimant in *Aetna* which carried no inventory, maintained at least an inventory of "raw steel used for fabrication," according to the

affidavit of Joseph L. Buntyn, President of Phoenix. Further, while Phoenix was responsible for the correction of its unacceptable work, there is nothing in the record to indicate a "backcharge" by Moon.

Plaintiff attaches some significance to the fact that Phoenix performed approximately two days of on-site repair work on the project. It is clear from the evidence, though, that while Phoenix did, on one occasion, send two of its employees to the site to correct a fabrication error, it did so as a matter of convenience. It was more economical to have those employees, who were already in the vicinity of the Project, simply make the repairs on-site rather than having the faulty handrails returned to Phoenix's office in Meridian. Phoenix was not otherwise required to have any employee at the job site during construction of the Project and Phoenix did not permanently install any of its product or supervise its installation. Phoenix simply shipped the materials to the job site. Moon's employees unloaded the materials and assembled them in accordance with the shop drawings and cut length sheets.

It is further undisputed that Phoenix, unlike Moon's subcontractors, was not required to and did not give a bond, and that it did not receive progress payments. Rather, Phoenix was paid by Moon within ten days of invoicing for its goods. Additionally, while Phoenix did not include sales taxes in its invoices, a factor which the *Aetna* court implied would weigh in favor of subcontractor status, an affidavit submitted by Lloyd T. Moon, President of Lloyd T. Moon, Inc., establishes that taxes were not included only because Moon provided a tax rider bond and received a material purchase certificate which obviated the need for Phoenix to charge sales tax.

Plaintiff's position is that since Phoenix supplied *all* structural steel for the Project, it assumed a specific part of the material requirements of Moon's contract and the supply of a complex integrated structural system for the Project, as described in *Aetna*. However, while it appears that Phoenix did supply all structural steel for the Project, its contract with Moon amounted

to only $20,038.00, or 5.15 percent, of the entire project. And of that amount, Phoenix fabricated only $10,075.43 of the materials; BSC supplied the rest to Phoenix which, in turn, supplied Moon.

Further, according to the affidavit of Lloyd T. Moon, the fabricated steel provided by Phoenix was considered in the industry to be standard, not complex, fabrication and in fact, "the structural requirements on [the Project] were so simple that the project did not require the designs to be approved or prepared by a structural engineer." Although plaintiff, in reliance on the affidavit of Thomas L. Clark, Jr., owner of BSC, has attempted to characterize the materials it furnished as a "complex, integrated structural system" which was "the very heart of the Project," it nevertheless appears to the court, after having reviewed Moon's affidavit, that the structural steel provided by Phoenix was utilized only in the mezzanine area of the Project, an area accounting for only fifteen percent of the total Project size. Otherwise, the Project was primarily supported by concrete masonry block and brick walls, not structural steel. It seems, therefore, that even if the steel supplied by Phoenix were in fact a "complex, integrated structural system," it was only so as to the mezzanine area, a relatively small portion of the overall Project. It is difficult, therefore, to hold

that a significant and definable part of the construction Project was assumed by Phoenix.

Based on the foregoing, the court can reach but one conclusion, that being that Phoenix was not a subcontractor, and was not treated as a subcontractor by Moon, but was instead a materialman.[2] Therefore, the protection of the Miller Act is unavailable to plaintiff as plaintiff does not fall within the coverage of the applicable statute. Accordingly, the court is of the opinion that defendant's motion for summary judgment should be granted and plaintiff's motion for summary judgment denied. A separate judgment shall be entered in accordance with Federal Rule of Civil Procedure 58.

ORDERED.

---

2. In support of its contention that Phoenix was a subcontractor on the Project, plaintiff relies on a number of cases from other circuits in which steel suppliers have been found to be subcontractors and not materialmen. Those cases are clearly distinguishable and add little, if anything, to buttress plaintiff's position. In *Miller Equipment Company v. Colonial Steel & Iron Co.*, 383 F.2d 669 (4th Cir.1967), *cert. denied*, 390 U.S. 955, 88 S.Ct. 1049, 19 L.Ed.2d 1148 (1968), although the supplier furnished only sixty-four percent of the steel requirements for the project whereas Phoenix supplied all the structural steel for the project in the case at bar, the steel supplied by the subcontractor in *Miller* amounted to fifteen percent, or $115,000.00, of the total project cost. Moreover, the Fourth Circuit in *Miller* found it telling that the agreement between the parties was not "for the mere supply of materials" but rather was for "the custom fabrication of massive girders and their accessories, key and integral components of the bridge, designed and fabricated to mesh precisely in their final assembly on the job-site." *Mil-*

*ler*, 383 F.2d at 674. That is, the court placed great emphasis on the fact of custom fabrication. The Fifth Circuit determined not to take that approach. *See Aetna*, 382 F.2d at 617.

Similarly, *Travelers Indemnity Company v. United States of America for the Use and Benefit of Western Steel Company*, 362 F.2d 896 (9th Cir.1966), adds little to plaintiff's argument since the subcontractor there agreed not only to supply materials, but separately negotiated and obtained a subcontract for the erection of the project, a radar tower. That fact alone obviated the need for determining whether the supplier was a "materialman" or "subcontractor" on the project. Finally, in *United States of America for the Use and Benefit of Consoldiated Pipe & Supply Company v. Morrison Knuedson Company, Inc.*, 687 F.2d 129 (6th Cir.1982), the finding that a subcontractor relationship existed was based on the subcontractor's having assumed substantial responsibilities with reference to the materials it supplied and to the project itself, responsibilities which were much greater than those assumed by Phoenix.