21 F.3d 1115
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SCHWAB SALES INCORPORATION, (United States of America, for
the use and benefit of), Plaintiff-Appellant,
v.
BISMARCK SAND & GRAVEL, INC., a foreign corporation; Royden
Construction, an Arizona corporation; the
American Insurance Company, a foreign
corporation, Defendants-Appellees.
SCHWAB SALES INCORPORATION, (United States of America, for
the use and benefit of), Plaintiff-Appellant,
v.
BISMARCK SAND & GRAVEL, INC., a foreign corporation; Royden
Construction, an Arizona corporation; the American
Insurance Company, a foreign corporation; the American
Insurance Company, a foreign corporation, Defendants-Appellees.
 Nos. 92-16845, 93-15112.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 11, 1994.
Decided March 28, 1994.
 
 Before: HUG, FARRIS, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 * The appellant recognizes that if Bismarck is a materialman, it is not entitled to recovery. Analyzing the Supreme Court cases of MacEvoy Co. v. United States for the Use of Calvin Tomkins Co., 322 U.S. 102 (1944) and F.D. Rich Co. v. United States for the Use of Industrial Lumber Co., 417 U.S. 116 (1974), this circuit has delineated those factors which indicate whether a supplier is a subcontractor or a materialman. United States for the Use and Benefit of Conveyer Rental & Sales Co. v. Aetna Cas. & Sur. Co., 981 F.2d 448, 451-52 (9th Cir.1992) (listing factors). Most of the factors supporting a finding that a supplier is a subcontractor are not present in this case and therefore argue against concluding that Bismarck was a subcontractor. First, the product supplied was not custom fabricated, but was sand and gravel that merely had to be washed and screened. Second, the product supplied was not a complex integrated system; it was simply sand and gravel used in construction. Third, a close financial interrelationship does not exist between Royden and Bismarck; Royden contracted with Bismarck to supply sand and gravel for this one project. Fourth, a continuing relationship does not exist between Royden and Bismarck. Fifth, Bismarck was not required to perform on site; rather, was instructed where to deliver the sand and gravel at the site. Sixth, there was no contract for labor in addition to materials. Seventh, the term "subcontractor" was not used in the agreement. Eighth, the materials supplied came from existing inventory to the extent that they came from a pit that Bismarck had leased not specifically for this project and from which Bismarck obtained sand and gravel for another project. Ninth, Bismarck was not required to post a performance bond. Finally, although Royden may still owe Bismarck some money, the record indicates that Bismarck was paid according to the amount of each individual delivery.
 
 
 3
 Only two factors support a finding that Bismarck was a subcontractor. First, at 23% of the total cost, the supplier's contract constitutes a substantial portion of the prime contract. However, this isolated statistic "overstates the importance of the gravel to the whole project considering the amount of work that had to be done to the gravel by other people for the road project to be completed." Aetna, 981 F.2d at 454. This statistic alone does not indicate the "substantiality of the relationship " so much as the relatively high cost of one of the inputs. Second, Bismarck was required to furnish all of the sand and gravel for the project; however, an alternative supplier was easily used when Bismarck could not supply on one occasion.
 
 
 4
 Other factors support the conclusion that Bismarck was a materialman: a purchase order form was used by the parties, the material came from preexisting inventory, and the item is relatively simple in nature. Id. at 452. Although the contract is not a small percentage of the total construction cost, this bare statistic should not be paramount, but rather should be viewed in context of the overall project.
 
 
 5
 Viewing the parties' relationship as a whole, we hold that Bismarck was a materialman and not a subcontractor.
 
 II
 
 6
 The district court erred in awarding attorneys' fees to the appellees because attorneys' fees are not generally available in Miller Act cases. United States for the Use and Benefit of Reed v. Callahan, 884 F.2d 1180, 1185 (9th Cir.1989), cert. denied, 493 U.S. 1094 (1990). There is no contract provision in this case and the appellees have not alleged bad faith or improper motive. United States ex rel. Leno v. Summit Constr. Co., 892 F.2d 788, 791 (9th Cir.1989). Consequently, we reverse the award of attorneys' fees to the appellees.
 
 
 7
 AFFIRMED IN PART, and REVERSED IN PART; each party to bear its own costs.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3