ISSC, INC., Plaintiff–Appellee,

v.

BAUGH SKANSKA INC., a Washington Corporation; Baugh Construction, a Washington Corporation; Skanska USA Building Company Inc., a Delaware Corporation; National Union Fire Insurance Company of Pittsburgh, PA, a Pennsylvania Corporation; Federal Insurance Company; Travelers Casualty & Surety Company of America, a Connecticut Corporation; St Paul Fire & Marine Insurance Company, a Minnesota Corporation; American International Group, Defendants–Appellants.

Nos. 04–35392, 04–35407.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 19, 2005.

Decided Dec. 23, 2005.

Lance Christopher Dahl, Esq., Preston Gates & Ellis LLP, Seattle, WA, for Plaintiff–Appellee.

John P. Ahlers, Esq., Michael Jospeh Crisera, Esq., Janet S. Kim, Esq., Short Cressman & Burgess, PLLC, Seattle, WA, for Defendants–Appellants.

Before: BRUNETTI and MCKEOWN, Circuit Judges, and KING,* District Judge.

## MEMORANDUM **

Baugh Skanska, Inc., and its sureties (collectively, Baugh) appeal a $182,777.91 judgment in favor of ISSC, Inc. (ISSC) on a payment bond issued under the Miller Act, 40 U.S.C. §§ 3131–34. ISSC cross-appeals, contending the district court erred in reducing its claim based upon a wrong interpretation of a conditional release. We have jurisdiction under 28 U.S.C. § 1291, and affirm in part and reverse and remand in part.

### I.

The district court correctly determined that Nordahl Metalfab was a subcontractor for purposes of the Miller Act. Nordahl took a substantial and specific part of the Whole Barracks Renewal Project at Fort Lewis. Nordahl was responsible for customizing every piece of fabricat-

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

ed steel to meet specifications to assemble into a "completely furnished and installed system." The balance of factors set forth in *United States ex rel. Conveyor Rental & Sales Co. v. Aetna Cas. & Sur. Co.*, 981 F.2d 448, 451 (9th Cir.1992) favors the position that ISSC supplied structural steel to a subcontractor, not to another supplier. Thus, ISSC qualifies to make a claim under the Miller Act.

## II.

ISSC does not dispute that the unconditional release signed on January 27, 2003, waived any Miller Act rights for steel delivered up to November 30, 2002 (worth $268,242), even if Nordahl had not yet satisfied all those invoices under their customary payment and allocation system. Rather, ISSC sought the value of the steel delivered after the unconditional release. This amount is the difference between the value of steel delivered up to February 2003 ($641,525) and the release amount ($268,242) or $373,283. Baugh contends ISSC should have allocated Nordahl's payments to invoices for Baugh's Fort Lewis project before crediting other projects. The general rule regarding allocation of payments is that a debtor (e.g., Nordahl) has the right to direct application of its payments to a creditor. *See, e.g., American Cas. Co. of Reading, Pennsylvania v. Idaho First Nat'l Bank*, 328 F.2d 138, 144 (9th Cir.1964) (citations omitted); *United States ex rel. C.H. Benton, Inc. v. Roelof Constr. Co.*, 418 F.2d 1328, 1330 (9th Cir. 1969) (stating exception to general rule). It is undisputed that Nordahl directed ISSC to credit any outstanding invoices due first among several different projects, allocated by date and not necessarily by project.

■ As to the exception to this general rule, Baugh failed to meet its burden to demonstrate ISSC knew or had reason to know the funds received from Nordahl during this period came solely from Baugh, so that ISSC could have a duty to allocate all Nordahl payments to the Fort Lewis project invoices. *Compare Consolidated Electric Co. v. United States ex rel. Gough Industries, Inc.*, 355 F.2d 437 (9th Cir.1966) (applying principle that a supplier must apply a payment to a project if the supplier knows or has reason to know that the source of the payment is the bonded project). The Nordahl/ISSC payment arrangement was customary and long-standing. It did not begin only when Nordahl started to have problems—something that might indicate favoring other projects over Baugh's bonded project. Indeed, the other Nordahl accounts that ISSC credited were also bonded projects. There is no incentive to misapply funds if the other debt is secured as well. And it is undisputed that Nordahl did not tell ISSC what portion of each payment was from Baugh, and Baugh did not instruct Nordahl how to disburse payments.

It follows that the district court properly interpreted the January 27, 2003, unconditional release as waiving only Miller Act rights for unpaid invoices before November 30, 2002. That is, the release meant that if Nordahl failed to continue to pay invoices as they became due, ISSC waived a right to make a Miller Act claim for pre-December 2002 deliveries. The release, however, did not waive the right to continue to be paid for outstanding invoices.

## III.

■ On cross-appeal, ISSC challenges the district court's failure to award it the full amount of unpaid Nordahl Fort Lewis project invoices (not otherwise released by the unconditional lien waiver) or $373,283. We agree with ISSC that the district court erred in finding that the January 22, 2003, conditional release (representing steel de-

livered in December 2002) was triggered. Rather, the release remained conditional because Nordahl had not yet paid for the December 2002 steel. Even if ISSC received gross payments exceeding $198,443.15 (the amount listed on the conditional release), that release was not triggered until ISSC received $198,443.15 for Fort Lewis project invoices. The form refers specifically to the Fort Lewis project and releases claims and rights of lien "on the above referenced job." Because ISSC had no specific duty to allocate payments from Nordahl only to the Fort Lewis project, a payment exceeding the listed amount would not trigger the conditional release unless—under the customary allocation system used by Nordahl and ISSC—the amount was for Fort Lewis project invoices.

Accordingly, ISSC's cross-appeal has merit; the district court incorrectly interpreted the conditional release to reduce the amount ISSC sought. ISSC is entitled to pre-judgment interest on the revised amount. We remand for further proceedings to effectuate this interpretation of the January 22, 2003, conditional release and to determine the appropriate amount of pre-judgment interest due.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.** Each party to bear its own costs on appeal.