**AETNA CASUALTY & SURETY COM-
PANY, Appellant,**

v.

**UNITED STATES of America for the Use
and Benefit of GIBSON STEEL COM-
PANY, Inc., Appellee.**

No. 23997.

United States Court of Appeals
Fifth Circuit.

Sept. 14, 1967.

Howard P. Ross, Anthony S. Battaglia, St. Petersburg, Fla., Arnold M. Schwartz, Los Angeles, Cal., Parker & Battaglia, St. Petersburg, Fla., for appellant.

Irving H. Levy, Birmingham, Ala., for appellee.

Before WISDOM and GODBOLD, Circuit Judges, and McRAE, District Judge.

WISDOM, Circuit Judge:

This case presents the narrow question whether one who furnishes custom-built items to a Miller Act [1] prime contractor is a subcontractor or a materialman within the meaning of the act. On the facts of this case, we hold that the key party, Rogers Fabricating Co., was a materialman. Accordingly we reverse.

Aetna Casualty and Surety Co. is the surety for the prime contractor, Paul Hardeman, Inc.-Morrison-Knudsen Company, Inc., which built the Manned Space Center Building at Merritt Island, Florida. The prime contractor entered into a purchase order contract with Rogers. This contract called for Rogers to furnish all the miscellaneous steel and iron products for the project, in accordance with the specifications set forth in the prime government contract. Rogers bought a few items already fabricated and delivered them directly to the prime contractor. It performed the remainder of the contract by custom fabricating items purchased from suppliers. This litigation arose when Rogers failed to pay its suppliers, and one of them, Gibson Steel Company, Inc., sued Aetna on the prime contractor's Miller Act payment bond.

■ The Miller Act payment bond protects not only those persons who deal directly with the prime contractor, but also certain classes of persons who have an indirect relationship with him. The statute provides, in pertinent part:

> [A]ny person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond * * *. 40 U.S.C. § 270b(a). (Emphasis added.)

The Supreme Court has interpreted this language to mean that a supplier may recover against the prime contractor's surety only when the supplier's customer was a subcontractor in a technical sense and not simply a materialman. MacEvoy v. United States, 1944, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163. The supplier's right to recover in this case, then, turns on whether Rogers was a subcontractor or a materialman. The parties have so stipulated.

The Court in *MacEvoy* cast some light on the meaning of "subcontractor" for purposes of the Miller Act. The Court said:

> In a broad, generic sense a subcontractor includes anyone who has a contract to furnish labor or material to the prime contractor. * * * But under the more technical meaning, as established by usage in the building trades, a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen. 322 U.S. at 108–109, 64 S.Ct. at 894.

---

1. The Miller Act, 40 U.S.C. §§ 270a and 270b, requires the prime contractor on most government construction projects to provide bonds both for performance and for the payment of laborers and materialmen.

The Court turned to the "practical considerations underlying the Act" to distinguish between "subcontractors" and "ordinary laborers and materialmen". The controlling consideration, it found, was the relatively small number of "subcontractors" and the relative ease with which the prime contractor could police their financial responsibility. The Court said:

> The relatively few subcontractors who perform part of the original contract represent in a sense the prime contractor and are well known to him. It is easy for the prime contractor to secure himself against loss by requiring the subcontractors to give security by bond, or otherwise, for the payment of those who contract directly with the subcontractors. * * * But this method of protection is generally inadequate to cope with remote and undeterminable liabilities incurred by an ordinary materialman, who may be a manufacturer, a wholesaler or a retailer. 322 U.S. at 110, 64 S.Ct. at 895.

As we read *MacEvoy*, in a borderline case [2] the distinction between a "subcontractor" and a "materialman" turns on the substantiality and importance of the relationship between the middle party and the prime contractor. If a middle party has taken responsibility for a large and definable part of the construction project, he is a "subcontractor"; otherwise he is a "materialman".

Most of the pertinent decisions of the lower federal courts support our reading of *MacEvoy*. Thus in United States v. Lembke Constr. Co., 10 Cir. 1966, 370 F.2d 293, the court refused to classify a middle party as a subcontractor even though he had undertaken to provide all the concrete for the project and to meet the specifications of the prime contract. The court disregarded the middle party's undertaking to furnish the total concrete requirements for the job, and held that nonetheless the prime contractor had not sufficiently "delegate[d] * * * a specific part of the labor or material requirements of the prime contract". Id. at 295. See also Brown & Root, Inc. v. Gifford-Hill & Co., 5 Cir. 1963, 319 F.2d 65; United States v. Wright Contracting Co., D.Md.1961, 194 F.Supp. 444.

Courts have found, however, that a delegation of responsibility may be sufficient to render a middle party a "subcontractor" when the middle party fabricated a complex installation, of relatively great importance in relation to the entire project. This classification held true even though the middle party did not install his product or do any on-site work. In United States v. MSI Corp., 2 Cir. 1965, 350 F.2d 285, for example, the middle party's contract was to furnish "a hydraulic system for opening and closing massive missile launcher roofs". Id. at 286. And in United States v. Monaco & Son, D.Md.1963, 222 F.Supp. 175,[3] the court classified as a "subcontractor" one who had agreed to furnish all the materials necessary to complete a heat distribution system.

These cases meet the plaintiff's argument that it is a "subcontractor" because it custom-built certain items. Custom manufacturing is simply not enough in itself to establish the relationship of responsibility and importance necessary to render a middle party a subcontractor. We recognize that United States v. John A. Johnson & Son, W.D.Pa.1955, 137 F.Supp. 562, holds to the contrary. We decline to follow it.

2. In many cases, of course, there may be no question whether the middle party is a subcontractor or a materialman. One who undertakes to do all the plumbing, or heating, or electrical work would certainly be a subcontractor. On the other hand, the mere nature of the product furnished may require a finding that he is a materialman. The sand and gravel cases may well fall into this clearcut category.

See United States v. Lembke Constr. Co., 10 Cir. 1966, 370 F.2d 293; Brown & Root, Inc. v. Gifford-Hill & Co., 5 Cir. 1963, 319 F.2d 65.

3. The Fourth Circuit reversed on another ground. 1964, 336 F.2d 636. The court explicitly refused to rule on the finding that the middle party was a "subcontractor".

We turn to the facts of this case. Aside from Rogers' undertaking to furnish the total requirements of miscellaneous steel for the project and its custom manufacturing most of the items it supplied, the supplier cites three considerations tending to indicate Rogers was a "subcontractor". First, the contract called for Rogers to submit shop drawings for approval by the Contracting Officer; second, Rogers carried no inventory; and third, the prime contractor "backcharged" Rogers for the cost of correcting any unacceptable work.

Of course these factors belong on the "subcontractor" side of the balance. Yet when we consider the factors on the other side of the balance we conclude that the necessary relationship of responsibility did not exist. The most important factor is the nature of the items Rogers supplied. None was a complex, integrated system. The most complex items were prefabricated stairs and ladders. Most of the items were such things as trench covers and frames; hand, guard, and wall rails; pipe sleeves; door lintels; soffit frames; floor expansion joint covers; and frames for fire extinguisher cabinet recesses. Both the variety and the relative simplicity of the items supplied weigh heavily against finding that Rogers took over a significant and definable part of the construction project.

Other matters to which we give weight are that Rogers' contract amounted roughly only to two percent of the total construction cost; that Rogers did no on-site work, either installing its products or supervising[4] their installation; that Rogers gave no performance bond to the prime contractor and did not receive progress payments from him; and that Rogers included various sales taxes in the contract price.

■ Weighing the conflicting elements present in this case, we hold that Rogers did not have the sort of relationship with the prime contractor that *Mac-*

*Evoy* requires of a Miller Act "subcontractor". We therefore reverse the judgment of the district court and remand the case with the direction that the supplier's complaint be dismissed.

4. Compare United States v. Monaco & Son, D.Md.1963, 222 F.Supp. 175, rev'd on other grounds, 4 Cir. 1964, 336 F.2d 636.