## Webster Brick Co., Inc. v. Fidelity & Deposit Co. of Maryland

*Carl Moore*, for plaintiff.
*John Wolford*, for defendant.

PFADT, *J.*, May 16, 1983—Each of the parties in this action has filed a motion for summary judgment and has stipulated to the facts which follow.

George Danko, Inc. contracted with the Mount Pleasant Area School District to construct an addition to the Mount Pleasant Junior High School. As the prime contractor, George Danko, Inc. was required by state law to furnish a labor and material payment bond to the school district. The bond was obtained from the defendant, Fidelity and Deposit Company of Maryland. George Danko, Inc. subsequently ordered a total of 144,500 bricks from

Ideal Brick and Tile Company (hereinafter Ideal) for use in the project and agreed to pay $165 per 1000 bricks delivered to the job site. Ideal did not manufacture the bricks which were so ordered, but, in turn, ordered bricks from the plaintiff, Webster Brick Co., Inc., and agreed to pay $90 per 1000 for said bricks. The bricks were to be delivered to Ideal's shipping dock in Virginia. Ideal picked up 153,340 bricks in Virginia and delivered them all to the job site in Mount Pleasant. Although George Danko, Inc. paid Ideal in full for the bricks which were ordered,* Ideal had only paid for 47,340 bricks when, due to insolvency, it became unable to pay the balance of the debt owed to plaintiff.

Plaintiff instituted the present action against the surety on the payment bond, seeking to recover the balance of the purchase price of the bricks which were delivered to the construction site.

The salient issue involved in this case is whether or not plaintiff is a proper claimant under the terms of the labor and material payment bond. The bond defines the term "claimant" as "one having a direct contract with the Principal [prime contractor] or with a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract. . . ." Given this language, it is clear that plaintiff can only recover from the surety if Ideal was a "subcontractor" of George Danko, Inc.

In order to resolve this issue, the term "subcontractor" must be accurately defined. The language contained in the payment bond was taken almost verbatim from the Public Works Contractors' Bond

---

*George Danko, Inc. refused to pay for 8,840 bricks which had been delivered in excess of the number ordered. These bricks were eventually buried at the job site when Ideal failed to remove them as requested.

Law of 1967, Act of December 20, 1967, P.L. 869, 8 P.S. §191 et. seq., the statute which established the bond requirement in public works construction contracts. Both parties agree that the Pennsylvania Bond Law governs the meaning of the language contained in the payment bond and that there is a dearth of Pennsylvania case law interpreting the Pennsylvania Bond Law. Further, the parties concur that the cases interpreting the federal equivalent of the Pennsylvania Bond Law, the Miller Act (40 U.S.C.S. §270(a) et seq.), are analogous and extremely helpful in construing the Pennsylvania Bond Law. The logic used in interpreting the Miller Act has been transferred and used in deciphering the meaning of the Pennsylvania Bond Law on at least two prior occasions. See: Lite-Air Products, Inc. v. Fidelity and Deposit Company of Maryland, 437 F. Supp. 801 (E.D. Pa. 1977) and Visor Builders, Inc. v. Devon E. Trauter, Inc., 470 F. Supp. 911 (M.D. Pa. 1978). Therefore, a review of the federal cases is appropriate here.

Two main cases analyzing the Miller Act offer some insight into the meaning of the Pennsylvania Bond Law and the specific language contained in the payment bond which is now at issue before the court. In Clifford F. MacEvoy v. U.S. for the use and benefit of Calvin Tompkins, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944), the U.S. Supreme Court held that "a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen." 322 U.S. at 109. Given this definition, it is clear that the plaintiff is not a proper claimant if, as a factual-legal matter, Ideal was a materialman as opposed to a subcontractor of George Danko, Inc.

In F. D. Rich Co. v. U.S. for the use of Industrial Lumber Co., Inc., 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed. 2d 703 (1974), the United States Supreme Court affirmed its previous definition of a "subcontractor" as it was set forth in MacEvoy, supra. Further, the court reasoned that if the subcontractor has a substantial relationship with the prime contractor, the prime contractor can easily "secure himself against loss by requiring the subcontractors to give security by bond, or otherwise, for the payment of those who contract directly with the subcontractors . . ." 417 U.S. at 710. Therefore, the onus is on the prime contractor to police the financial responsibility of subcontractors. The court determined, however, that it wold be an unreasonable burden upon the prime contractor if he was required to also shoulder the "remote and undeterminable liabilities incurred by ordinary material-[men], who may be manufacturer[s], wholesaler[s] or retailer[s]." 417 U.S. at 710.

In Rich, supra, the middleman who agreed to supply custom millwork for a government housing project was determined to be a "subcontractor" because he shared a "special, integral, almost symbiotic relationship with" the prime contractor. 417 U.S. at 711.

The United States Court of Appeals considered MacEvoy in Aetna Casualty and Surety Company v. U.S., 382 F. 2d 615 (5th Cir. 1967) and stated that "in a borderline case, the distinction between a 'subcontractor' and a 'materialman' turns on the substantiality and importance of the relationship between the middle party and the prime contractor. If the middle party has taken responsibility for a large and definable part of the construction project, he is a 'subcontractor'; otherwise he is a 'materialman.'" 382 F. 2d at 617. In that case, the court also

stated that "custom manufacturing is simply not enough in itself to establish the relationship of responsibility and importance necessary to render a middle party a subcontractor." 382 F. 2d at 617. Pursuant to that reasoning, a middleman would be considered a subcontractor only if it "fabricated a complex installation of relatively great importance in relation to the entire project." 382 F.. 2d at 617.

In Aetna, supra, the court declined to follow the holding in U.S. v. John A. Johnson & Son, 137 F. Supp. 562 (W.D. Pa. 1955) in which the middleman was deemed a subcontractor because it provided custom-built steel ladders, stairs, trench covers and frames, and floor expansion joints to the prime contractor.

While the parties would have us reconcile or choose from the two conflicting rulings by the U.S. appellate courts, such action is unnecessary. The product which Ideal agreed to supply to the prime contractor in the present case was neither custom-made to the prime contractor's specifications, nor was it a complex installation of relatively great importance in relation to the entire project. We can think of few building materials which are more interchangeable and less customized than a brick. Plaintiff has not indicated that the bricks it supplied were anything other than ordinary, generic bricks, so, apparently, there is no factual question which must be resolved concerning that matter, and this case is ripe for disposition by way of summary judgment.

The relationship between the prime contractor and the middleman in this case was not an "integral," "symbiotic relationship" and the middleman had not assumed the responsibility for manufacturing a large and definable part of the construction project. In short, Ideal was merely a materialman

who furnished common building materials to the prime contractor. The United States Supreme Court has determined, in Miller Act suits, that the prime contractor should not be held responsible for the financial irresponsibility of materialmen and the logic used by the United States Supreme Court is equally applicable in the present case. Since we have determined that the middleman is a materialman and not a subcontractor, plaintiff is not a proper claimant under the tems of the Labor and Material Payment Bond.

## ORDER

And now, May 16, 1983, defendant's motion for summary judgment is hereby granted; plaintiff's cross-motion for summary judgment is denied.