PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LIMBACH COMPANY LLC,
                    *Plaintiff-Appellant,*

v.

ZURICH AMERICAN INSURANCE
COMPANY,

                    *Defendant-Appellee.*

No. 04-1261

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-03-685-A)

Argued: October 29, 2004

Decided: January 24, 2005

Before WIDENER and MOTZ, Circuit Judges,
and Glen E. CONRAD, United States District Judge for the
Western District of Virginia, sitting by designation.

Reversed and remanded by published per curiam opinion.

## COUNSEL

**ARGUED:** Douglas Leo Patin, SPRIGGS & HOLLINGSWORTH,
Washington, D.C., for Appellant. David Drake Hudgins, Alexandria,
Virginia, for Appellee. **ON BRIEF:** Christyne K. Brennan, SPRIGGS
& HOLLINGSWORTH, Washington, D.C., for Appellant.

**OPINION**

PER CURIAM:

This appeal arises from an insurance coverage dispute. On May 27, 2003, Limbach Company LLC (Limbach) filed an action against Zurich American Insurance Company (Zurich), claiming that a commercial liability policy issued by Zurich provided coverage for property damage caused by Limbach's faulty workmanship. On cross-motions for summary judgment, the district court ruled that the property damage was excluded from coverage by the policy. Accordingly, the court awarded summary judgment to Zurich. Limbach has appealed and, for the reasons explained below, we reverse and remand.

I.

A.

In 1999, Limbach entered into a subcontract with Morse Diesel/Essex to perform mechanical work at the Howard University Health Sciences Building in Washington, D.C. Under the subcontract, Limbach was responsible for installing a prefabricated, insulated, underground steam line. Limbach contracted with Thermacor Process, Inc. (Thermacor) for the production of the steam pipe. Legacy Builders, one of Limbach's subcontractors, excavated the trench for the steam pipe and backfilled the trench after the pipe was installed. Limbach completed its work in November 2000.

On June 19, 2001, after Howard University began using the steam line, a leak in the steam line was discovered. It is undisputed that Limbach's employees caused the leak when they improperly unpackaged the steam pipe prior to installation. The employees used an acetylene torch to remove the pipe's shipping bar. The torch weakened the pipe, which caused the pipe to leak. The leak damaged the insulation covering the pipe, the backfill placed around the steam line, and the landscaping in the area surrounding the leak. Morse Diesel/Essex directed Limbach to replace the damaged pipe and to repair the property damage caused by the leak. In order to excavate the damaged

steam pipe, Limbach had to remove concrete that was installed by a third party. As a result, Limbach had to hire a company to perform concrete replacement work.

## B.

During the relevant period, Limbach was insured under a commercial liability policy issued by Zurich. The policy provides that Zurich "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy applies to completed operations, as defined in the policy under "products-completed operations hazard." This term is defined, in pertinent part, as follows:

"Products completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The insurance policy contains several exclusions that limit Zurich's duty to provide coverage to Limbach. One of those exclusions is relevant to the present controversy. Pursuant to exclusion (l) (the "your work" exclusion), the insurance policy does not apply to "Damage To Your Work." This exclusion reads as follows:

> Damage to Your Work
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

The exclusion includes the following exception:

> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The insurance policy defines "your work" as "[w]ork or operations performed by you or on your behalf," and "[m]aterials, parts or equipment furnished in connection with such work or operations."

### C.

Limbach filed a timely notice and claim with Zurich for the costs of replacing the damaged steam pipe and repairing the work damaged by the leak. Limbach's claim included (1) the cost of repairing the damaged backfill; (2) the cost of replacing the damaged steam pipe; (3) the cost of repairing the damaged landscaping; (4) the cost of replacing concrete; and (5) the cost of a temporary steam boiler. By letter dated May 3, 2002, Zurich agreed to cover the cost of the temporary steam boiler, as well as a portion of the cost of repairing the damaged landscaping. However, Zurich denied coverage for the balance of Limbach's claim. The company did not respond to Limbach's request for reconsideration.

On May 27, 2003, Limbach filed an action against Zurich in the Eastern District of Virginia, claiming that the costs of repairing and replacing the work damaged by the leak were covered under the

insurance policy, and that the company was entitled to the unpaid portion of its insurance claim. Jurisdiction in this dispute is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. Limbach and Zurich filed cross-motions for summary judgment. The district court ruled in favor of Zurich, concluding that all of the damaged work was excluded from coverage by the "your work" exclusion. Accordingly, the court awarded summary judgment to Zurich. Limbach has appealed.

## II.

We review a grant of summary judgment de novo, viewing all facts and inferences in the light most favorable to the nonmoving party. *Love-Lane v. Martin*, 355 F.3d 766, 775 (4th Cir. 2004). We may uphold an award of summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.

Limbach contends that its insurance claim covers the cost of repairing or replacing damaged work performed by subcontractors and third parties, and that the damaged work is not excluded from coverage by the insurance policy. Zurich contends that the damaged work is excluded from coverage by the "your work" exclusion.

### A.

In an action based upon diversity of citizenship, the relevant state law controls. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). The district court must apply the law of the forum state, including its choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-497, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). Applying Virginia choice of law rules, the district court properly chose to apply Pennsylvania law, since the parties agree that the insurance contract was delivered in Pennsylvania. *See Keco Indus., Inc. v. ACF Indus., Inc.*, 316 F.2d 513, 514 (4th Cir. 1963).

Under Pennsylvania law, the interpretation of an insurance policy is a matter of law for the court. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3rd Cir. 1997) (citing *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (Pa. 1983)). "When the policy language is clear and unambiguous, the court must give effect to the language of the contract." *Travelers Cas. & Sur. Co. v. Castegnaro*, 565 Pa. 246, 772 A.2d 456, 458 (Pa. 2001). Conversely, where the policy is ambiguous, the ambiguous term must be construed in favor of the insured. *Medical Protective Co. v. Watkins*, 198 F.3d 100, 104 (3rd Cir. 1999).

## B.

As noted above, the commercial liability policy issued by Zurich provides coverage for damage to the property of others that arises after the insured's work has been completed. However, the policy contains an exclusion for "Damage To Your Work." In assessing whether the property damage at issue in this case is covered by the policy, we must determine whether the "your work" exclusion eliminates coverage.

## 1.

A portion of Limbach's insurance claim covers the cost of repairing the damaged backfill. The parties stipulated that the leak damaged the backfill placed around the steam line. It is undisputed that the backfill work was performed on Limbach's behalf by a subcontractor, Legacy Builders. Since "your work," as defined in the insurance policy, includes work performed on an insured's behalf, Zurich maintains that the "your work" exclusion precludes coverage for the cost of repairing the damaged backfill. We disagree.

The "your work" exclusion contains an exception for work performed by a subcontractor. The exclusion specifically states that it "does not apply if the *damaged work* or the work out of which the damage arises was performed on your behalf by a subcontractor." (emphasis added).

The history of this exception was reviewed by the Pennsylvania Superior Court in *Kvaerner Metals Div. of Kvaerner U.S., Inc. v.*

*Commer. Union Ins. Co.*, 2003 Pa. Super. 149, 825 A.2d 641, 655-656 (Pa. Super. 2003), *appeal granted*, 577 Pa. 667, 848 A.2d 925 (Pa. Apr. 5, 2004) (quoting the *Comprehensive General Liability Policy Handbook*, p. 106 (Nelson, P., Ed.)) (emphasis added):

> In 1986, the Insurance Services office (ISO) issued reworded Commercial General liability forms. The new form of the insured's work exclusion now states that the insurance does not apply to:
>
>> Property damage to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'
>>
>> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
>
> In light of these changes, in theory there should no longer be any doubt as to the limited scope of this exclusion.
>
> . . . .
>
> The 1986 revisions to the CGL policy significantly limit the effect of the work/product exclusions in construction defect cases. If the completed structure no longer qualifies as the insured contractor's "product", the exclusions would likely apply only to the extent that *the contractor's own work* was damaged as a result of its *own faulty workmanship*.

Upon reviewing the history of the subcontractor exception in *Kvaerner Metals*, the Pennsylvania Superior Court remanded the case to the trial court for application of the exception. *Id.* at 658. The court noted that the subcontractor exception "alters the definition of 'your work' . . . so as to exclude work performed by a subcontractor." *Id.* at 655. *See also Spears v. Smith*, 117 Ohio App. 3d 262, 690 N.E.2d 557, 560 (Ohio Ct. App. 1996) (holding that the "unambiguous terms" of the "your work" exclusion do not eliminate coverage for harm done to a subcontractor's work).

In the present case, the parties stipulated that the leak from the steam line damaged the backfill placed around the steam line. The backfill work was performed on Limbach's behalf by a subcontractor, Legacy Builders. As a result, the "your work" exclusion does not preclude coverage for the cost of repairing the damaged backfill. To hold otherwise would be to ignore the unambiguous terms of the exclusion's exception for work performed by a subcontractor.

2.

Limbach's insurance claim also includes the cost of replacing the damaged steam pipe. Limbach argued in its motion for summary judgment that the damaged pipe was not excluded from coverage, because the pipe was manufactured by a subcontractor, Thermacor. The district court ultimately determined that Thermacor was a "materialman" rather than a subcontractor, and that the damaged steam pipe was therefore excluded from coverage by the "your work" exclusion. We disagree.

The district court emphasized in its opinion that although the manufacturer of custom-built materials may be considered a subcontractor, "the fact that something might be custom built is not dispositive." To support this assertion, the district court cited to *United States v. Lane Constr. Corp.*, 477 F. Supp. 400 (M.D. Penn. 1979), a case involving the determination of whether a manufacturer who produced hydraulic gates to be used in the construction of a dam was a subcontractor within the meaning of the Miller Act. While the *Lane* court noted that "custom manufacturing by itself is not sufficient" to establish a contractor-subcontractor relationship, the court ultimately concluded that the manufacturer was a subcontractor within the meaning of the Miller Act. *Id.* at 411-412. Although the court recognized that the manufacturer's work constituted only two percent of the primary contract's value, and that the manufacturer did not perform any significant on-site work, the court based its conclusion on the following facts: (1) the manufacturer had to prepare shop drawings to be submitted to the Corps of Engineers; (2) the gates had to be manufactured according to Corps specifications; (3) the contractor conceded that it could not manufacture the gates itself; (4) once manufactured, the gates could not be used in another structure; and (5) the gates were an important part of the dam structure. *Id.*

The facts of this case are similar to those presented in *Lane*. Limbach's contract with Morse Diesel/Essex required the installation of an insulated steam pipe. Since Limbach could not fabricate the pipe itself, the company contracted with Thermacor for the production of the pipe. According to the affidavit of the foreman assigned to the Howard University project, Thermacor submitted shop drawings, which were approved by Limbach. Thereafter, Thermacor custom manufactured the steam pipe in accordance with the shop drawings and project specifications. One of Thermacor's representatives visited the work site, reviewed the installation drawings with Limbach, and provided specific instructions regarding the installation of the pipe.

Thermacor's role is highly distinguishable from that of the supplier in *Webster Brick v. Fidelity & Deposit Co.*, 27 Pa. D. & C.3d 7 (Pa. D. & C. 1983), another case cited by the district court. In *Webster Brick*, the court considered whether a brick supplier was a subcontractor within the meaning of the Miller Act. *Id.* at 8-9. In deciding that the brick supplier was not a subcontractor, the court emphasized that the "ordinary, generic bricks" provided by the supplier were "neither custom-made to the prime contractor's specifications, nor [were they] . . . of relatively great importance in relation to the entire project." *Id.* at 11. The court further noted that it could "think of few building materials which are more interchangeable and less customized than a brick." *Id.*

Although we are unable to find any Pennsylvania cases that consider the issue of whether a manufacturer or supplier is a subcontractor for purposes of the exception to the "your work" exclusion, this issue was thoroughly considered by the United States District Court for the Eastern District of Missouri in the case of *Nat'l Union Fire Ins. Co. v. Structural Sys. Tech., Inc.*, 756 F. Supp. 1232 (E.D. Mo. 1991). In determining that a manufacturer of prefabricated steel rods for a tower was a subcontractor, the court explained as follows:

> The policy does not define "subcontractor." Webster defines subcontract as "a contract that assigns some of the obligations of a prior contract to another party," and subcontractor as "one that enters into a subcontract and assumes some of the obligations of the primary contractor." Similarly, subcontractor also is defined as "One who takes [a] portion of

> a contract from [the] principal contractor or another subcontractor," and "One who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance."
>
> In determining the applicability of this exception, the Court is guided by several principles of contract construction. First, plain and unambiguous language in an insurance contract must be given its plain meaning. Second, the insurer bears the burden of proving the applicability of an exclusion. And finally, the provisions restricting coverage are construed in favor of the insured and against the insurer.
>
> In this particular case, National has not proven to this court that LeBlanc & Royle was merely a materialman and not a subcontractor within the meaning of the contract. Rather, it appears from all indications that LeBlanc & Royle's role was actually one of a major component of the tower, the steel rods. According to the contract between SST and LeBlanc & Royle, the latter was to "Provide, Fabricate, Galvanize & Deliver to the site all materials per" certain specifications. The contract then outlines certain design and manufacturing specifications. Therefore, with respect to the tower, the exception to the exclusion does apply.

*Id.* at 1239-1240 (citations omitted). On appeal, the United States Court of Appeals for the Eighth Circuit affirmed the district court's decision that the manufacturer of prefabricated steel rods was a subcontractor for purposes of the exception to the "your work" exclusion. *Nat'l Union Fire Ins. Co. v. Structural Sys. Tech., Inc.*, 964 F.2d 759, 763 (8th Cir. 1992). *See also Wanzek Constr., Inc. v. Employers Ins.*, 679 N.W.2d 322, 329 (Minn. 2004) (holding that a supplier of coping stones for a new swimming pool was a subcontractor for purposes of the "your work" exclusion, since the supplier custom manufactured the coping stones to the architect's specifications and provided on-site supervision in connection with the installation).

Upon reviewing the cases cited by the district court as well as those directly on point, we reject the district court's characterization and conclude that Thermacor was a subcontractor. As previously

explained, Thermacor custom manufactured the steam pipe in accordance with the shop drawings and project specifications, and the company provided on-site installation instructions. Furthermore, the parties' differing interpretations of the term "subcontractor" demonstrate that the term is ambiguous. Under Pennsylvania law, ambiguous terms in an insurance policy must be construed in favor of the insured. *Medical Protective Co.*, 198 F.3d at 104. Since we conclude that the steam pipe was manufactured by a subcontractor, and since the parties stipulated that the pipe was damaged by the leak, the "your work" exclusion does not preclude coverage for the cost of replacing the pipe. The damaged pipe clearly falls within the exclusion's exception for work performed by a subcontractor.

3.

The final portion of Limbach's insurance claim includes the costs of replacing concrete and repairing damaged landscaping.\* Neither the concrete work nor the landscaping work was performed by Limbach or on Limbach's behalf. The parties stipulated that the leak damaged the landscaping around the pipe. In order to replace the damaged steam pipe, Limbach had to remove concrete. Limbach argued in its cross-motion for summary judgment that the costs of replacing the concrete and repairing the damaged landscaping were covered by the insurance policy. Although the district court did not specifically address the concrete or landscaping costs, the court apparently concluded that these costs were excluded from coverage by the "your work" exclusion. We disagree.

"General liability insurance policies are intended to provide coverage where the insured's product or work causes personal injury or damage to the person or property of another." *Ryan Homes, Inc. v. Home Indem. Co.*, 436 Pa. Super. 342, 647 A.2d 939, 942 (Pa. Super. 1994). Therefore, instead of excluding all property damage arising from an insured's work, the policy at issue in this case specifically excludes "Damage to *Your Work*." (emphasis added). By its plain language, the "your work" exclusion only excludes coverage for damage to an insured's work that arises out of the insured's faulty workmanship. It does not exclude coverage for damage to a third party's work.

---

\*Zurich paid for part of the cost of repairing the damaged landscaping.

*See Missouri Terrazzo Co. v. Iowa Nat'l Mut. Ins. Co.*, 740 F.2d 647, 650 (8th Cir. 1984) (affirming the district court's decision that a similar exclusion for work performed by the insured "did not bar coverage for injury to property other than that of the insured."). Since the landscaping and concrete work were performed by third parties, the "your work" exclusion does not preclude coverage for the costs of repairing and replacing the landscaping and concrete.

## IV.

Pursuant to the foregoing, we reverse the award of summary judgment to Zurich and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*