**SECURITY INSURANCE COMPANY OF HARTFORD, Plaintiff,**

v.

**CAMPBELL SCHNEIDER & ASSOCIATES, LLC; Alan O. Campbell; and Alan J. Schweickhardt, Defendants.**

No. C.A.2:04–22230–PMD.

United States District Court,
D. South Carolina,
Charleston Division.

March 2, 2007.

Stephanie H. Burton, Gibbes Burton, Spartanburg, SC, for Plaintiff.

Bradish Johnson Waring, Nexsen Pruet Jacobs Pollard and Robinson, Timothy A. Domin, Clawson and Staubes, Charleston, SC, for Defendants.

## ORDER

DUFFY, District Judge.

This matter is before the court upon Defendant Alan O. Campbell's ("Campbell"), Defendant Alan J. Schweickhardt's ("Schweickhardt"), and Defendant Campbell Schneider & Associates, LLC's ("CSA") Motions for Attorney's Fees. For the reasons set forth herein, the court grants Defendants' motions.

## BACKGROUND

Campbell, a licensed professional engineer, formed Alan O. Campbell, P.E., Inc. ("AOC") in July of 1995, and Schweickhardt was employed by AOC as a structural engineer. AOC applied for and obtained professional liability coverage from Plaintiff Security Insurance Company of Hartford ("Security") that same month (the "AOC Policy"). The AOC Policy was a claims-made policy with a retroactive date of July 21, 1995. In 1996, Regency Towers Homeowner's Association ("Regency Towers") was experiencing water intrusion and water damage to its oceanfront condominium building located in Myrtle Beach, South Carolina. AOC submitted a proposal in April of 1996 that included an engineering investigation of the building envelope, recommendations and specifications for repairs, and preparation of bid documents. Regency Towers accepted the proposal. Campbell served as Project Manager when AOC began work in 1996, and Schweickhardt assumed these duties in early 1997.

AOC ceased doing business on December 31, 1998. By letter dated February 2, 1999, AOC asked that coverage under the AOC Policy be terminated. Security cancelled the AOC Policy effective January 1, 1999. Campbell formed CSA, which began conducting business on January 1, 1999. In August 1999, CSA applied for and obtained professional liability coverage from Security (the "CSA policy"). The CSA Policy was a claims-made policy with a retroactive date of August 30, 1999.

In early 2001, Regency Towers notified CSA that the building was leaking and identified several areas of water damage. In March 2002, Regency Towers commenced a lawsuit against CSA, Campbell, and Schweickhardt in the Court of Common Pleas for Horry County. The complaint alleges breach of contract, breach of

warranties, and negligence arising out of Defendants' professional services performed for Regency Towers. Defendants tendered the claim to Security under the CSA Policy in March 2002 and under the AOC Policy in December 2004.

On September 15, 2004, Security brought this action against Campbell, Schweickhardt, and CSA, seeking a declaration that the two policies it issued do not provide coverage for the claims. This court tried the matter without a jury on October 31, 2006 and issued its Findings of Fact and Conclusions of Law on December 1, 2006. The parties stipulated that Security did not have a duty to defend or indemnify Defendants under the terms of the AOC Policy. (*See* Order ¶ 67.) The court found that "[w]hile some of Regency Towers' allegations [could] be connected to a period of time before the retroactive date of the CSA Policy, other allegations could be construed as regarding professional services rendered after the retroactive date of the CSA Policy." (Order ¶ 65.) The court stated,

10. Security has a duty to defend Campbell, Schweickhardt, and CSA in the State Action. The State Action is at a preliminary stage, and as of the date of this trial, neither Campbell's nor Schweickhardt's depositions have been taken. It is uncertain exactly what acts or omissions of the Defendants allegedly caused Regency Towers to suffer damages. Although the Defendants provided Regency Towers with some professional services before the effective date of the CSA policy, the allegations in the State Action could also be construed as complaining about professional services Defendants rendered after the policy's effective date. Because Regency Towers' complaint creates the possibility of coverage under the CSA policy, Security is obligated to defend Campbell, Schweickhardt, and CSA in the State Action.

. . .

12. Because no findings of fact have been made in [Regency Towers'] State Action, this Court will not rule on the indemnity issue because that issue is not ripe for adjudication.

(Order ¶¶ 10, 12.)

On December 5, 2006, Defendant CSA filed a Motion for Attorney's Fees; Defendants Campbell and Schweickhardt filed their Motion for Attorney's Fees on December 6, 2006. Plaintiff filed a Memorandum in Opposition to Defendants' Motions for Attorney's Fees, to which Defendant CSA filed a Reply.

### ANALYSIS

Defendants assert they are entitled to an award of attorney's fees pursuant to *Hegler v. Gulf Insurance Co.*, 270 S.C. 548, 243 S.E.2d 443 (1978). In that case, Gulf Insurance Company issued a general automobile liability insurance policy to Hegler; the policy obligated Gulf Insurance to defend Hegler "against any suit seeking damages on account of bodily injury or property damage." *Id.* at 549, 243 S.E.2d at 443. While this policy was in force, Hegler's vehicle was involved in an accident resulting in injury to a passenger, and the passenger brought suit against Hegler. *Id.* at 549, 243 S.E.2d at 443. Although Gulf Insurance undertook to defend Hegler in the action, it notified Hegler "that it would bring a declaratory judgment action to determine liability under the policy of insurance and advised him to obtain his own attorney to represent him in the forthcoming action." *Id.* at 549, 243 S.E.2d at 443. Hegler retained independent counsel, and the declaratory judgment action "was ultimately decided in [Hegler's] favor, upon a finding that coverage existed under the policy." *Id.* at 549, 243 S.E.2d at 443.

Hegler then brought an action against Gulf Insurance to recover for attorney's

fees he incurred in successfully defending the declaratory judgment action. The Supreme Court of South Carolina noted that because Hegler did not assert the right to recover attorney's fees pursuant to a statute, he would recover them, if at all, under a contractual right. *Id.* at 549, 243 S.E.2d at 444. The policy provisions required Gulf Insurance

> (1) to pay on behalf of [Hegler] all sums which [Hegler] shall become legally obligated to pay as damages because of bodily injury or property damage, and (2) to defend any suit against the insured ([Hegler]) seeking damages on account of such bodily injury or property damage, even if the allegations of the suit are groundless, false or fraudulent.

*Id.* at 549–50, 243 S.E.2d at 444 (internal quotation marks omitted). The court found Hegler was entitled to an award of attorney's fees:

> The declaratory judgment action established [Gulf Insurance's] obligation under the policy to defend the action for damages. If [Gulf Insurance] had refused initially to defend, it would undoubtedly have been liable for the payment of counsel fees incurred by [Hegler] in the defense of the damage action. Instead however of refusing initially, [Gulf Insurance] began the defense and then sought, through the declaratory judgment action, to avoid any obligation to continue to defend. In order to obtain [Gulf Insurance's] continued defense of the action for damages, it was necessary for [Hegler] to employ counsel to resist the contention by [Gulf Insurance] of lack of coverage. There is no material difference in the legal effect between an outright refusal to defend and in undertaking the defense under a reservation of rights until a declaratory judgment is prosecuted to resolve the question of coverage. In either event, an insured

must employ counsel to defend in the first instance in the damage action and in the second in the declaratory judgment action to force the insurer to provide the defense. In both, the counsel fees are incurred because of the insurer's disclaimer of any obligation to defend.

*Id.* at 550, 243 S.E.2d at 444. Applying the law to Hegler's case, the Supreme Court of South Carolina found Hegler's legal fees "in successfully asserting his rights against [Gulf Insurance's] attempt in the declaratory judgment action to avoid its obligation to defend, were damages arising directly as a result of the breach of the contract." *Id.* at 550–51, 243 S.E.2d at 444.

 In the case *sub judice,* Plaintiff argues the court should not grant Defendants' Motions for Attorney's Fees for several reasons. First, Plaintiff argues *Hegler* does not apply because "*Hegler* appears to have been decided pursuant to the South Carolina Uniform Declaratory Judgments Act, not the federal Act. Defendants have not cited any authority that this rule applies in an action commenced pursuant to the federal Act." (Pl.'s Mem. in Opp'n at 4.) While Defendants did not cite authority for the proposition that *Hegler* applies in an action commenced pursuant to the federal Act, Plaintiff likewise cited no authority for its argument that *Hegler* is inapplicable.

This action was filed pursuant to the federal Declaratory Judgment Act, and the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. (*See* Compl. ¶ 6; Order ¶ 1.) It is well-settled that in diversity cases, the federal court applies the substantive law of the forum state. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 77–78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see also Limbach Co. v. Zurich American Ins. Co.,* 396 F.3d 358, 361 (4th Cir.2005); *Talkington v. Atria Reclamelucifers Fa-*

*brieken BV (Cricket BV)*, 152 F.3d 254, 260 (4th Cir.1998) ("This case is before us pursuant to diversity jurisdiction, and thus we are bound to apply governing state law, as interpreted by the relevant state's highest court." (citations omitted)). Because a claim under the federal Declaratory Judgment Act[1] does not confer jurisdiction, *see Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), the fact that Plaintiff brought this action pursuant to that Act does not mean *Hegler* is inapplicable. As Defendants state, "In an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Culbertson v. Jno. McCall Coal Co.*, 495 F.2d 1403, 1406 (4th Cir.1974) (quotation marks and citation omitted). Several courts have held state law regarding attor-

ney's fees applicable in declaratory judgment actions filed in federal court.[2] *See St. Paul Fire & Marine Ins. Co. v. Fallon*, 16 F.3d 411 (4th Cir.1994) (unpublished table decision) (affirming district court's award of attorney's fees insured incurred in defending himself against insurer's declaratory judgment action); *see also Titan Holdings Syndicate, Inc. v. City of Keene*, 898 F.2d 265, 273–74 (1st Cir.1990) ("The complaint which began this action . . . stated it was brought under the *Federal* Declaratory Judgment Act, which does not explicitly provide for attorney's fees awards. The appellees cannot avoid liability for attorney's fees simply by choosing to base their complaint on the federal act, though. The availability of attorney's fees still turns on state law, and state law now shows a clear intention to make attorney's fees available for actions brought to determine liability coverage in federal court." (citations omitted))[3]; *W. World Ins. Co. v. Harford Mut. Ins. Co.*, 602 F.Supp. 36, 37

---

**1.** *See* 28 U.S.C. §§ 2201, 2202.

**2.** Not all courts are in agreement on this issue. For example, in *John v. Key Energy Services, Inc.*, No. H–06–1716, 2006 WL 2266262 (S.D.Tex. Aug. 8, 2006), Plaintiff Francis John filed suit against Key Energy for several causes of action, one of them being breach of an employment agreement. Defendant Key Energy filed several counterclaims against Plaintiff, including several claims for declaratory judgment. Plaintiff moved to dismiss certain counterclaims to the extent they sought attorney's fees, costs, and expenses. Plaintiff argued the "Federal Declaratory Judgment Act does not authorize an award of attorney's fees, costs, or expenses, and that the Texas Declaratory Judgment Act, which does permit them, is not applicable in federal court under *Erie* principles." *John*, 2006 WL 2266262, at *8. The court granted Plaintiff's motion to dismiss these counterclaims and stated,

> Key Energy's declaratory judgment actions do not state whether they are pursuant to the Federal Declaratory Judgment Act, the Texas Declaratory Judgment Act, or

the Pennsylvania Declaratory Judgment Act. The Federal Declaratory Judgment Act, 28 U.S.C. § 2202, does not authorize an award of costs, fees, or expenses. Although the Texas Declaratory Judgment Act permits recovery of attorney's fees and costs, the Fifth Circuit has held that under *Erie* principles the Texas Declaratory Judgment Act is procedural and thus not applicable in federal court.

> Even assuming, *arguendo*, that Pennsylvania law applies to the issue of attorney's fees in the declaratory judgment actions, Key Energy would not be entitled to attorney's fees, costs, or expenses in its declaratory judgment counterclaims. Pennsylvania law only permits recovery of attorney's fees in declaratory judgment actions in a narrow class of cases.

*Id.* at *8–9.

**3.** In New Hampshire, an insured is entitled to costs and reasonable attorneys' fees from the insurer if the insured prevails in a declaratory judgment action to determine coverage. *See* N.H.Rev.Stat. Ann. § 491:22–b. "The remedy of declaratory judgment to determine the coverage of a liability insurance policy under

(D.Md.1985), *aff'd in part, rev'd in part* 784 F.2d 558 (4th Cir.1986) (awarding attorney's fees to a plaintiff and noting, "In a declaratory judgment action brought pursuant to 28 U.S.C. §§ 2201, 2202, the reasonable sum of attorneys' fees and costs incurred in the filing and prosecution of the declaratory judgment action may be recovered, in the discretion of the court, if such recovery would be available under state law.... In Maryland, attorneys' fees and costs incurred in prosecuting a declaratory judgment action may be recovered by an insured from an insurer who unjustifiably has refused to defend." (citations omitted)). Thus, even though the action was brought pursuant to the federal Declaratory Judgment Act, the law of South Carolina applies. Because *Hegler* is the Supreme Court of South Carolina's interpretation of South Carolina law, this court is therefore bound to apply its holding.

Plaintiff next argues that even if South Carolina law applies to the determination of Defendants' entitlement to attorney's fees, Defendants' request should be denied for several reasons:

(1) Defendants fail to acknowledge the action involved a determination of coverage under two separate insurance policies;

(2) the court did not find that coverage under the CSA Policy exists;

(3) at trial, Defendants argued for coverage under the CSA Policy because they visited the site after the policy's retroactive date, but the court did not find coverage under the policy based on this argument;

(4) Defendants are not entitled to attorney's fees associated with prosecuting the counterclaim they filed; and

(5) there is no evidence that Plaintiff acted unreasonably or in bad faith in defending the State Action pursuant to a reservation of rights and pursuing this declaratory judgment action.

(*See* Pl.'s Resp. in Opp'n at 4–7.) Plaintiff first argues Defendants should not recover attorney's fees because they did not prevail with respect to the AOC Policy. Plaintiff argues that it prevailed. While it is true that the court determined Defendants were not entitled to coverage under the AOC Policy, the parties stipulated Plaintiff had no duty to defend or indemnify Defendants pursuant to the AOC Policy. (*See* Order ¶ 67.)

█ Plaintiff next two arguments arise from the fact that the court did not determine that coverage under the CSA Policy exists. Plaintiff states, "Defendants cannot reasonably argue that they have successfully defended this declaratory judgment action when the Court has not even issued a final ruling on the merits as to coverage." (Pl.'s Resp. in Opp'n at 5.) Plaintiff argues the court's "factual findings demonstrate that the CSA Policy does

RSA 491:22, 22–a, and 22–b shall also be available in the United States district court for the district of New Hampshire when that court may properly adjudicate the matter under the laws of the United States." § 491:22–c. The United States District Court for the District of New Hampshire found attorney's fees available pursuant to these statutes even if the action was brought under the federal Declaratory Judgment Act, provided the action could have been brought under the state Act. *See Town of Peterborough v. Hartford Fire Ins. Co.*, 824 F.Supp. 1102, 1112 (D.N.H.

1993). The court stated, "Although attorney's fees are available pursuant to [state statute] to a party in an action brought under 28 U.S.C. § 2201 where such action could have been brought under [the state statute], said remedy is not available to a party who could not have invoked [the state statute]." *Id.* South Carolina does not have comparable statutes; the most similar statute states, "In any proceeding under this [declaratory judgments] chapter the court may make such award of costs as may seem equitable and just." S.C.CODE § 15–53–100.

not provide coverage for many of the claims asserted by Regency Towers in the tort action." (Pl.'s Resp. in Opp'n at 7.) While the court did not rule on the duty to indemnify, the court did determine Plaintiff has a duty to defend Campbell, Schweickhardt, and CSA in the underlying state action. (*See* Order ¶¶ 10, 12.) The fact that the court did not rule on the duty to indemnify does not mean Defendants are not entitled to attorney's fees. In *Hegler*, the declaratory judgment action was decided in favor of the insured; the court found coverage existed under the policy. *Hegler*, 270 S.C. at 549, 243 S.E.2d at 443. While the court did not determine coverage in the case *sub judice*, it did determine the duty to defend. The Supreme Court of South Carolina has approved an award of attorney's fees to an insured in defending an insurer's declaratory judgment action where the lower court ruled the insurer had a duty to defend the insured. *See First Fin. Ins. Co. v. Sea Island Sport Fishing Soc'y, Inc.*, 327 S.C. 12, 16–17, 490 S.E.2d 257, 259 (1997). Thus, the fact that the court ruled only on the issue of duty to defend does not mean an award of attorney's fees is not warranted.

Plaintiff argues Defendants are not entitled to attorney's fees associated with prosecuting the counterclaim they filed. Defendants asserted a counterclaim against Plaintiff, seeking "a judgment against Plaintiff declaring the rights, obligations, duties, and responsibilities of the parties with respect to said Policy." (*See* CSA's and Campbell's Ans. ¶ 27; Schweickhardt's Ans. ¶ 26.) Both *Hegler* and *First Financial Insurance Company* dealt with attorney's fees solely in the

context of the insurer's declaratory judgment action against the insured; those cases awarded attorney's fees the insured incurred in defending the insurer's action. However, assuming Plaintiff is correct that attorney's fees are not appropriate in the context of counterclaims, on this set of facts, the original declaratory judgment action and Defendants' counterclaims are essentially identical. Plaintiff sought a declaration that its policy does not provide coverage to Defendants in connection with the claims asserted against Defendants in the underlying state action. (*See* Compl. p. 5–6.) Defendants sought a declaration of the parties' rights and obligations with respect to the policy. While the parties sought different holdings, the issues of duty to defend and duty to indemnify were identical. As such, the court will not reduce an award of attorney's fees to Defendants simply because they filed a counterclaim.

■ Plaintiff's final argument is that the court should not award attorney's fees to Defendants because there is no evidence that Plaintiff acted unreasonably or in bad faith in defending the State Action pursuant to a reservation of rights and pursuing this declaratory judgment action. Neither *Hegler* nor *First Financial Insurance Company* mentions bad faith, however. While some states require a finding of bad faith before allowing an insured to recover attorney's fees for defending a declaratory judgment action brought by the insurer, *see Iowa Mut. Ins. Co. v. Davis*, 689 F.Supp. 1028, 1031 (D.Mont.1988), South Carolina does not require such a finding. *See Hegler*, 270 S.C. 548, 243 S.E.2d 443; *see also First Financial Ins. Co.*, 327 S.C. 12, 490 S.E.2d 257.[4] Therefore, pursuant

---

4. In *Hegler*, the insurance company's actions "amounted to a wrongful breach of its contractual obligation to defend." *Hegler*, 270 S.C. at 550, 243 S.E.2d at 444. The case did not state, however, that the insurance company acted in bad faith. *First Financial* contains no mention of bad faith or wrongful conduct. *See First Financial Ins. Co.*, 327 S.C. 12, 490 S.E.2d 257.

to *Hegler* and *First Financial Insurance Company,* Defendants are entitled to an award of reasonable attorney's fees.

■ "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "[T]he critical inquiry in determining the reasonableness [of a fee award] is now generally recognized as the appropriate hourly rate." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "If the hourly rate is properly calculated, the product of reasonable hours times the reasonable rate normally provides a reasonable attorney's fee …" *Daly v. Hill,* 790 F.2d 1071, 1077 (4th Cir.1986) (internal quotation marks and citations omitted). Generally speaking, the district court should consider the *Johnson* factors in determining the lodestar figure. *Id.* The *Johnson* factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Burnley v. Short,* 730 F.2d 136, 141 n. 2 (4th Cir.1984); *see also Johnson v. Ga. Highway Express,* 488 F.2d 714 (5th Cir. 1974).

In the case *sub judice,* R. Bruce Wallace submitted an affidavit stating that (1) the total for fees in the action is $19,691.50,[5] (2) he incurred expenses of $735.95, and (3) he anticipates spending three hours in preparing the affidavit and motion for attorney's fees, for an additional attorney's fee of $675. (Wallace Aff. ¶¶ 13–15.) Mr. Wallace bills $225 per hour.[6] Mr. Timothy A. Domin likewise submitted an affidavit stating that the total charges for representing CSA in this matter are $10,200. (Domin Aff. ¶ 5.)[7] Mr. Domin also spent 1.5 hours in researching and drafting the Reply to Plaintiff's Memorandum in Opposition to Defendants' Motions for Attorney's Fees. The total fee for Mr. Domin is thus $10,425.

■ Plaintiff does not argue that the hourly rates are unreasonable. While "[e]vidence of the prevailing market rate usually takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate, … in the absence of sufficient documentation, the court may rely on its own knowledge of the market." *CoStar Group, Inc. v. LoopNet, Inc.,* 106 F.Supp.2d 780, 788 (D.Md.2000) (citations omitted). Given that Mr. Wallace is a member of Nexsen Pruet Adams Kleemeier, LLC, and has been in private practice since 1998 (after a two-year clerk-

---

**5.** This figure includes the time of two attorneys, Mr. Waring and Mr. Wallace, and two paralegals, Ms. Leventis and Ms. Taylor.

**6.** It appears Mr. Wallace's fee increased over the course of the litigation from $205 per hour to $225 per hour. It also appears the

fee for a paralegal's time increased since 2004.

**7.** It appears Mr. Domin's fee per hour is $150, while the fee for Candais Franklin, paralegal, is $60 per hour.

ship with the Honorable C. Weston Houck), the court finds $225 is a reasonable rate. *See CoStar,* 106 F.Supp.2d at 788. The court likewise finds Mr. Domin's requested rate of $150 per hour to be reasonable; Mr. Domin has experience in litigating insurance issues. *See id.* Furthermore, the court finds the requested rate of $60 per hour for Ms. Candais Franklin, paralegal, is reasonable. *Id.* However, based on the court's knowledge of the market, the court will award fees for Ms. Kimberly Taylor and Ms. Kelly Leventis, paralegals, at the rate of $85 per hour. *See Wilson v. Barnhart,* No. 1:06CV00062, 2006 WL 3455071, at *2 (W.D.Va. Nov. 30, 2006) (finding an award of $75 per hour for a paralegal's time to be reasonable); *see also Burns v. Anderson,* No. 1:02CV1326 JCC, 2006 WL 2456372, at *9 (E.D.Va. Aug. 22, 2006) ("In *American Canoe Association v. United States Environmental Protection Agency,* 138 F.Supp.2d 722 (E.D.Va.2001), [the United States District Court for the Eastern District of Virginia] approved hourly rates ranging from $200.00 to $250.00 for attorneys with experience equivalent to that of a partner, $100.00 to $150.00 for attorneys with experience equivalent to that of an associate, and $55.00 to $85.00 for paralegals.").[8]

The court must next assess whether the amount of time the attorneys spent in the case *sub judice* is reasonable. Mr. Wallace and Mr. Domin, having recognized the risk of duplicative work, divided and distributed the work to the extent possible. (Wallace Aff. ¶¶ 10–11.) Having reviewed the Defendants' attorneys' statement of fees, the court determines the amount of time spent by the attorneys and support staff is reasonable. Accordingly, Defendants are entitled to an award of attorneys fees and costs in the following amounts: (1) Mr. Wallace and his support staff: $20,026.45;[9] (2) Mr. Domin and his support staff: $10,425.

## CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Campbell's and Schweickhardt's Motion for Attorney's Fees is hereby **GRANTED** in the amount of $20,026.45. It is further **ORDERED** that CSA's Motion for Attorney's Fees is **GRANTED** in the amount of $10,425.

### AND IT IS SO ORDERED.

---

**8.** The court finds the lodestar fee adequately takes the *Johnson* factors into account. *See Daly,* 790 F.2d at 1077 (citing *Blum,* 465 U.S. at 896 n. 11, 104 S.Ct. 1541). The factors of (1) time and labor expended and (2) novelty and difficulty of the questions raised are taken into account by the amount of hours the attorneys and paralegals spent on the case. Likewise, the attorneys' skills, as well as the opportunity costs in pressing this litigation, are incorporated into the hourly rates billed by the attorneys. In determining a reasonable rate based on the court's own knowledge of the market, the court took the following factors into account: (5) the customary fee for like work, (9) the experience, reputation and ability of the attorney, and (12) attorneys' fees awards in similar cases. The court is uncer-

tain of the attorneys' expectations at the outset of the litigation, but they obtained significant results for their clients in obtaining a ruling that Plaintiff has a duty to defend Defendants in the underlying state action. The court also finds that factors (7), (10), and (11) are adequately taken into account in the attorneys' and paralegals' hourly rates. The court therefore awards the fees as requested, with the exception of the rate for Ms. Kimberly Taylor and Ms. Kelly Leventis, for which an award of $85 per hour is reasonable.

**9.** This figure includes the following: (1) Mr. Waring's time: $1816; (2) Ms. Leventis's time: $841.50; (3) Mr. Wallace's time: $14,355; (4) Ms. Taylor's time: $2278; and (5) expenses of $735.95.